1
2
3
4
5
6              UNITED STATES DISTRICT COURT

7              EASTERN DISTRICT OF CALIFORNIA

8

9    AMANDEEP SINGH,                          No. 2:23-cv-01379-TLN-CSK

10                  Plaintiff,

11          v.                                 **ORDER**

12   AUTOZONE PARTS, INC., et al.,

13                  Defendants.

14

15

16

17          This matter is before the Court on Defendant AutoZone Parts, Inc.'s ("AutoZone")

18   Motion to Dismiss.  (ECF No. 63.)  Also pending before the Court is Defendant Rauch-Milliken

19   International Inc.'s ("RMI") Motion to Dismiss.[1]  (ECF No. 65.)  Both motions have been fully

20   briefed.  For the reasons set forth below, the Court GRANTS AutoZone's motion to dismiss (ECF

21   No. 63) and GRANTS RMI's motion to dismiss (ECF No. 65).

22   ///

23   ///

24   ///

25   ///

26   ///

27   _____

28   [1]      There are six named Defendants remaining in this action.  The Court notes AutoZone and
     RMI are the only Defendants who filed motions to dismiss in this action.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case concerns alleged identity theft and credit fraud.  Plaintiff is a small business owner who owned and operated JD Tire Wheel & Alignment ("JD Tire") in Modesto, California.  (ECF No. 43 at 3.)  As part of JD Tire's operations, Plaintiff purchased equipment from AutoZone's Modesto store and opened a cash on delivery account with AutoZone (the "AutoZone Account").  (*Id*.)  On March 16, 2022, JD Tire caught fire and was no longer operational as a result.  (*Id*.)  Following the fire, Plaintiff alleges an unknown individual looted JD Tire twice and gained access to JD Tire's records which included Plaintiff's personal information.  (*Id*. at 4.)  Soon after, Plaintiff noticed unauthorized credit inquiries on his credit report from July 2022 through August 2022.  (*Id*.)

On February 20, 2023, Plaintiff received a collection notice from RMI seeking repayment of $11,165.46 owed on the AutoZone Account.  (*Id*. at 5.)  Plaintiff alleges he was unaware of any outstanding debt from the AutoZone Account because JD Tire was no longer operating, and Plaintiff had stopped making purchases from AutoZone.  (*Id*.)  After receiving the collection notice, Plaintiff called AutoZone to contest the charges and learned that over $11,000.00 worth of consumer goods were purchased from an AutoZone store in Merced, California on the AutoZone Account.  (*Id*.)  Plaintiff alleges he did not authorize anyone to make these purchases, and only ever made purchases from AutoZone's Modesto store — not its Merced store. (*Id*.)  Before processing the transaction, Plaintiff alleges that the Merced AutoZone contacted the Modesto AutoZone who approved the purchase but never contacted Plaintiff.  (*Id*.)  While AutoZone has since recognized the authorization was inappropriate, Plaintiff alleges neither AutoZone nor RMI has discharged the $11,165.46 owed on the AutoZone Account.  (*Id*. at 6.)

On July 12, 2023, Plaintiff initiated this action against RMI, AutoZone, and eight other Defendants. (ECF No. 1.)  On September 21, 2023, Plaintiff filed his First Amended Complaint ("FAC"), alleging the following four causes of action against RMI and AutoZone: (1) negligence; (2) intentional infliction of emotional distress; (3) negligent infliction of emotion distress; and (4) violation of 18 U.S.C. § 1962(c).  (ECF No. 43.)  On November 3, 2023, RMI and AutoZone

2

1   filed the instant motions to dismiss.[2]  (ECF Nos. 63, 65.)  Both motions are brought pursuant to

2   Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (*Id.*)  To the extent RMI and AutoZone's

3   arguments overlap, the Court will address both motions to dismiss together.

## II.   STANDARD OF LAW

5          A motion to dismiss for failure to state a claim upon which relief can be granted under

6   Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th

7   Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim

8   showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

9   (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice

10  of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S.

11  544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on

12  liberal discovery rules and summary judgment motions to define disputed facts and issues and to

13  dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

14         On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

15  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give the plaintiff the benefit of every

16  reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

17  *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

18  "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

19  relief."  *Twombly*, 550 U.S. at 570.

20         Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

21  factual allegations."  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

22  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

23  unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

24  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

---

26  [2]      On June 21, 2024, the Court ordered Plaintiff to show cause as to why the Court should
27  not dismiss Plaintiff's state-law claims for lack of subject matter jurisdiction.  (ECF No. 80.)
    Having reviewed Plaintiff's response, the Court finds it does have subject matter jurisdiction over
28  Plaintiff's state-law claims pursuant to 28 U.S.C. §1332 and DISCHARGES the order to show
    cause.

1  elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

2  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

3  statements, do not suffice.").  Moreover, it is inappropriate to assume the plaintiff "can prove

4  facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

5  been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459

6  U.S. 519, 526 (1983).

7  　　　　Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

8  facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697.  "A claim has

9  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

10  reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 680.  While

11  the plausibility requirement is not akin to a probability requirement, it demands more than "a

12  sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is "a

13  context-specific task that requires the reviewing court to draw on its judicial experience and

14  common sense." *Id.* at 679.

15  　　　　In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits

16  thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

17  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

18  *Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

19  　　　　If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

20  amend even if no request to amend the pleading was made, unless it determines that the pleading

21  could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

22  1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

23  　　　　**III.**　　**ANALYSIS**

24  　　　　AutoZone and RMI move to dismiss all claims against them pursuant to Rule 12(b)(6).

25  (ECF Nos. 63, 65.)  The Court will address each of Plaintiff's claims against AutoZone and RMI

26  in turn.

27  ///

28  ///

A.      Negligence

In Claim One, Plaintiff alleges AutoZone and RMI were negligent in attempting to collect the $11,165.46 charged to Plaintiff's AutoZone account.  (ECF No. 43 at 7.)

To state a claim for negligence under California law, Plaintiff must allege that AutoZone and RMI "had a duty to use due care, that [it] breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. Cty. of San Diego*, 57 Cal. 4th 622, 629 (2013) (internal quotations omitted).  AutoZone and RMI argue the Court must dismiss Plaintiff's negligence claim because Plaintiff has not sufficiently alleged that either AutoZone or RMI owed Plaintiff a special legal duty of care.  (ECF Nos. 63 at 6, 65 at 17.)

Generally, under California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095–96 (1991).  "[L]iability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender." *Id*. at 1096 (internal quotations and citations omitted).  But "'[n]ormal supervision of the enterprise by the lender for the protection of its security interest in loan collateral is not 'active participation' in the financed enterprise.'" *Id*. at 1097 (quoting *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (1980)).

Similarly, as a general rule, "a debt collector owes no duty of care to debtors in the collection of consumer debts." *Montegna v. Ocwen Loan Servicing, LLC*, No. 17-CV-00939-AJB-BLM, 2017 WL 4680168, at *11 (S.D. Cal. Oct. 18, 2017).  However, courts have found a debt collector may be liable when their debt collection efforts go beyond the pale and constitute harassing and abusive behavior.  *Quinones v. Ocwen Loan Servicing, LLC*, No. 17–03536 DPP–PLAX, 2017 WL 4641083, at *3 (C.D. Cal. Oct. 16, 2017); *see also Garcia v. Ocwen Loan Servicing, LLC*, Case No. CV 17–3514–R, 2017 WL 8222634, at *4 (C.D. Cal. Oct. 31, 2017) (finding that a duty existed because "[d]efendant's attempt to collect on an alleged debt by calling plaintiff's personal cell phone more than 1,600 times may well exceed the scope of Defendant's conventional role in the loan context.").

In the instant case, Plaintiff's allegations in his negligence claim against AutoZone and RMI focus on their efforts to collect the $11,165.46 charged to the AutoZone Account.  (ECF No. 43 at 6–8.)  Specifically, Plaintiff alleges "[r]ather than contact Plaintiff or investigate the matter in any meaningful manner AutoZone sent Plaintiff's account to collections."  (*Id*. at 7.)  Plaintiff further alleges that had AutoZone or RMI done its due diligence, then both AutoZone and RMI would have seen that the debt arose from unauthorized purchases to the AutoZone Account.  (*Id*.)  By failing to conduct this reasonable diligence, Plaintiff alleges AutoZone and RMI breached their duty of care to Plaintiff.  (*Id*. at 8.)

However, in these allegations, there are no facts which suggest AutoZone or RMI's actions went "beyond the domain" of a creditor or debt collector seeking to collect on its debt.  *Nymark*, 231 Cal. App. 3d at 1096.  Indeed, "[t]he fact that [a] plaintiff contest[s] the validity of the underlying debt and challenge[s] [defendants'] steps to collect that debt … does not turn their actions into ones which create a special legal duty of care allowing plaintiff to assert a negligence claim."  *Sepehry-Fard v. Dep't Stores Nat'l Bank*, No. 13-CV-03131-WHO, 2013 WL 6574774, at *3 (N.D. Cal. Dec. 13, 2013), *aff'd in part*, 670 F. App'x 573 (9th Cir. 2016) (finding plaintiff had not alleged its creditor owed plaintiff a duty of care, where plaintiff had only alleged the creditor took reasonable steps to collect on a debt).  In the instant case, as in *Sepehry–Fard*, Plaintiff's allegations show only that AutoZone acted as a creditor and RMI acted as a debt collector seeking to collect on a debt allegedly owed by Plaintiff.  (*See* ECF No. 43.)  There are no allegations in the FAC that either AutoZone or RMI berated, harassed, or in any way crossed the bounds of decency with Plaintiff.  Without such allegations, the Court finds Plaintiff has failed to allege the type of duty of care that California courts would find sufficient to state negligence claim against AutoZone and RMI.

Accordingly, the Court GRANTS AutoZone and RMI's motions to dismiss Plaintiff's negligence claim.  (ECF Nos. 63, 65.)  Additionally, the Court will give Plaintiff an opportunity to amend based on the liberal standard in favor of granting leave to amend.  *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) ("Courts are free to grant a party leave to amend whenever justice so requires, and request for leave should be granted with extreme liberality.").

1              B.      Intentional Infliction of Emotional Distress

2          In Claim Four, Plaintiff alleges AutoZone and RMI attempted to collect the $11,165.43

3   owed on the AutoZone Account that AutoZone and RMI "knew or should have known was not

4   owed by Plaintiff" and "[s]uch collection efforts were done with the intent to cause severe

5   emotional distress to Plaintiff to coerce Plaintiff to pay a debt Plaintiff did not owe."  (ECF No.

6   43 at 11.)

7          In California, to adequately state a claim for intentional infliction of emotional distress

8   (IIED), a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the

9   intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the

10  plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation

11  of the emotional distress by the defendant's outrageous conduct."  *Hughes v. Pair*, 46 Cal. 4th

12  1035, 1050 (2009) (internal quotations and citations omitted).  Conduct is "outrageous" if it is "so

13  extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Id.* at 1050.

14  Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or

15  other trivialities.  *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 617 (1989).

16         "In the context of debt collection, courts have recognized that the attempted collection of a

17  debt by its very nature often causes the debtor to suffer emotional distress."  *Ross v. Creel*

18  *Printing & Publishing Co.*, 100 Cal. App. 4th 736, 745 (2002) (citing *Bundren v. Superior Court*,

19  145 Cal. App. 3d 784, 789 (1983)).  "Frequently, the creditor intentionally seeks to create concern

20  and worry in the mind of the debtor in order to induce payment."  *Bundren*, 145 Cal. App. 3d at

21  789.  However, such conduct is only outrageous if it goes beyond "all reasonable bounds of

22  decency."  *Id.*  For example, a defendant's debt collection methods may rise to the level of

23  outrageous conduct where the creditor knows the debtor is susceptible to emotional distress

24  because of his or her mental condition.  *Symonds v. Mercury Sav. & Loan Ass'n*, 225 Cal. App.

25  3d 1458, 1469 (1990).

26         In the instant case, AutoZone and RMI argue the Court must dismiss Plaintiff's IIED

27  claim because Plaintiff has not alleged that AutoZone nor RMI's efforts to collect Plaintiff's

28  unpaid debt rose to the level of outrageous conduct.  (ECF Nos. 63 at 8, 65 at 19.)  In opposition,

1    Plaintiff argues AutoZone and RMI's conduct was outrageous because they attempted to collect

2    the balance owed on Plaintiff's AutoZone Account despite knowing Plaintiff was not responsible

3    for the underlying purchases.  (ECF Nos. 68 at 14, 69 at 22.)

4         Indeed, in *Kindley v. Flagstar Bank*, the court found a defendant's conduct rose to the

5    level of outrageous conduct because the defendant had "abused its position of authority by

6    repeatedly harassing plaintiff and demanding payment for a debt [defendant] knew plaintiff had

7    already paid." No. 04-CV-0319-IEG (WMC), 2004 WL 5631084, at *3 (S.D. Cal. Oct. 28,

8    2004). *Kindley*, however, is distinguishable from the instant case.  While Plaintiff contests the

9    validity of his underlying debt, Plaintiff has not alleged that either AutoZone or RMI knew the

10   debt was fraudulent when they sent Plaintiff the debt collection notice.  Plaintiff has also not

11   alleged AutoZone or RMI harassed Plaintiff in their efforts to collect the balance owed on

12   Plaintiff's AutoZone Account.  In fact, Plaintiff only alleges he received two collection notices

13   related to the unpaid AutoZone Account balance on February 20, 2023.  (ECF No. 43 at 5.)

14   Without more, the Court cannot find AutoZone or RMI's conduct went beyond "all reasonable

15   bounds of decency." *Bundren*, 145 Cal. App. 3d at 789.

16        As a result, the Court GRANTS AutoZone and RMI's motions to dismiss and

17   DISMISSES Plaintiff's IIED claim with leave to amend.

18                    C.    Negligent Infliction of Emotional Distress

19        In Claim Five, Plaintiff alleges AutoZone and RMI were negligent in their attempts to

20   collect the $11,165.43 owed on the AutoZone Account and "caused Plaintiff to suffer severe

21   emotional distress including but not limited to nervousness, anxiety, worry, shock, and shame."

22   (ECF No. 43 at 12.)

23        "Negligent infliction of emotional distress" is not an independent tort doctrine in

24   California.  *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993) ("[T]here is no

25   independent tort of negligent infliction of emotional distress").  Rather, "[n]egligent infliction of

26   emotional distress is a form of the tort of negligence, to which the elements of duty, breach of

27   duty, causation and damages apply." *Griffith v. Bank of Am., N.A.*, No. CV–11–5867 PA FFMX,

28   2011 WL 6849048, at * 9 (C.D. Cal. Dec. 13, 2011) (quoting *Huggins v. Longs Drug Stores Cal.,*

*Inc.*, 6 Cal. 4th 124, 129 (1993)). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Savs. & Loan Ass'n,* 231 Cal. App. 3d 1089, 1095 (1991).

Additionally, in California, the extent to which defendants may be liable for negligent infliction of emotional distress without physical injury has been limited due to public policy considerations. *Bro v. Glaser*, 22 Cal. App. 4th 1398, 1440–41, (1994). Recovery for emotional distress in negligence cases is generally not available "unless malice, breach of a fiduciary duty, physical injury or impact, or some other unusually extreme or outrageous circumstance, can be shown." *Miranda v. Field Asset Servs.*, No. 11–CV–1514–GPC–JMA, 2013 WL 3283701, at *5 (S.D.Cal. June 27, 2013) (citing *Branch v. Homefed Bank*, 6 Cal. App. 4th 793, 801 (1992)). The court in *Chaconas v. JP Morgan Chase Bank*, surveyed California case law and described the following negligence cases where courts have allowed plaintiffs to pursue emotional distress claims:

> a doctor misdiagnosing a plaintiff's wife with syphilis, *see Molien v. Kaiser Foundation Hospitals*, 27 Cal. 3d 916, 930–31 (1980), a hired therapist sexually molesting a plaintiff's sons, *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal. 3d 583, 591 (1989), a school board failing to notify a plaintiff that her daughter was sexually molested by a fellow student, *Phyllis P. v. Superior Court*, 183 Cal. App. 3d 1193, 1197–98 (1986), a crematorium mishandling the remains of plaintiffs' close relative, *Christensen v. Superior Court*, 54 Cal. 3d 868, 894–896 (1991), and a company's unlawful disposal of toxic waste which caused plaintiff to develop a fear of cancer after ingesting contaminated water, *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993).

713 F. Supp. 2d 1180, 1186 (S.D. Cal. 2010).

However, as addressed above, "[d]ebt collectors and debtors do not generally have a special relationship, and where no threat of physical injury is alleged, allegations of unfair debt collection practices are insufficient to state 'the type of duty that California courts would find sufficient to state a claim for negligent infliction of emotional distress." *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 991 (N.D. Cal. 2014) (quoting *Chaconas*, 713 F. Supp. 2d at 1187.)

Accordingly, the Court GRANTS AutoZone and RMI's motions to dismiss and

1  DISMISSES Plaintiff's negligent infliction of emotional distress claim with leave to amend.

2  (ECF Nos. 63, 65.)

3         D.   RICO

4         In Claim Six, Plaintiff alleges RMI and AutoZone, along with their employees, engaged in

5  a conspiracy to use the United States Postal Service to demand money from Plaintiff that they

6  knew or should have known was not owed by Plaintiff in violation of the Racketeer Influenced

7  and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1961 et seq.).  (ECF No. 43 at 12–14.)

8         To maintain a civil RICO claim, a plaintiff must allege that the defendant engaged in: "(1)

9  conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally,

10  must establish that (5) the defendant caused injury to plaintiff's business or property." *Black v.*

11  *Corvel Enter. Comp Inc.*, 756 F. App'x 706, 708 (9th Cir. 2018) (citing 18 U.S.C. §§ 1962(c),

12  1964(c)).

13        RMI and AutoZone argue the Court must dismiss Plaintiff's RICO claim because Plaintiff

14  has not sufficiently alleged RMI was part of a RICO enterprise.  (ECF Nos. 63 at 11, 65 at 11.)

15  The RICO statute requires that a defendant be employed by or associated with an "enterprise."  18

16  U.S.C. § 1962(c).  "Section 1961(4) describes two categories of associations that come within the

17  purview of the "enterprise" definition."  *United States v. Turkette*, 452 U.S. 576, 581 (1981.)

18  "The first category encompasses organizations such as corporations and partnerships, and other

19  'legal entities.'"  *Id*.  "The second category covers 'any union or group of individuals associated

20  in fact although not a legal entity.'"  *Id*. at 582.  In the instant case, Plaintiff alleges RMI, in and

21  of itself, constitutes an enterprise under the first category.  (ECF No. 43 at 13.)  Alternatively,

22  Plaintiff alleges RMI and AutoZone collectively constitute an enterprise under the second

23  category.  (*Id.*)  AutoZone and RMI argue both allegations are insufficient to state a RICO

24  enterprise under § 1962(c).  (ECF No. 63 at 11, 65 at 11.)  The Court agrees with AutoZone and

25  RMI.

26  ///

27  ///

28  ///

10

As a threshold matter, the Court finds Plaintiff has not sufficiently alleged that RMI, in and of itself, constitutes a RICO enterprise under the first category.  The RICO statute provides that an "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4); *see also Odom v. Microsoft Corp.*, 486 F.3d 541, 548 (9th Cir. 2007).  While the definition of RICO enterprise is expansive, "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 164 (2001).  This distinctiveness requirement is satisfied, and RICO applies, when a plaintiff alleges that "the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their *own* affairs.  *Id*. at 163 (emphasis in original) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)).  For example, a corporate officer can be a person distinct from the corporate enterprise when the officer/employee conducts the affairs of the corporation through illegal activity.  *Cedric*, 533 US at 163–64; *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005); *see also Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992) ("This decision makes it clear that the inability of a corporation to operate except through its officers is not an impediment to section 1962(c) suits.  That fact poses a problem only when the corporation is the named defendant — when it is both the 'person' and the 'enterprise.'").

In the instant case, Plaintiff's allegations do not even attempt to differentiate RMI the "person" from RMI the "enterprise."  (ECF No. 43 at 13.)  Specifically, Plaintiff has not named any RMI officers or employees as defendants in this action, nor has Plaintiff alleged any RMI officers or employees engaged in illegal activity on behalf of RMI.[3]  Rather, Plaintiff simply states that RMI, the Defendant, constitutes an enterprise.  (*Id*.)  Without more, Plaintiff's allegation that RMI, in and of itself, constitutes an enterprise does not satisfy § 1962(c)'s threshold distinctiveness requirement.

---

[3]     The only RMI employee identified in the FAC is Fay Martin, whom Plaintiffs describe was a point of contact at RMI who arranges for online payments.

1      In the alternative, Plaintiff also alleges RMI and AutoZone participated in an "associated-

2  in-fact enterprise" under the second category of RICO enterprises.  (ECF No. 43 at 13.)  An

3  "association-in-fact enterprise is a group of persons associated together for a common purpose of

4  engaging in a course of conduct."  *Boyle v. U.S.*, 556 U.S. 938, 946 (2009).  To adequately plead

5  an associated-in-fact RICO enterprise, a plaintiff must: (1) "describe a group of persons

6  associated together for a common purpose of engaging in a course of conduct;" (2) provide

7  "evidence of an ongoing organization, formal or informal;" and (3) provide "evidence that the

8  various associates function as a continuing unit."  *Odom*, 486 F.3d at 549 (quoting *United States*

9  *v. Turkette*, 452 U.S. 576, 583 (1981)).

10     AutoZone and RMI argue Plaintiff has not sufficiently alleged an association-in-fact

11 enterprise between AutoZone and RMI because the activity complained of does not go beyond

12 that of normal business affairs between a creditor and debt collector.  (ECF No. 63 at 11, 65 at

13 12.)  The Court agrees with AutoZone and RMI.

14     In the Ninth Circuit, "the law is unsettled as to whether the common purpose must be

15 fraudulent."  *Chagby v. Target Corp.,* No. CV 08–4425–GKH, 2008 WL 5686105, at *2 (C.D.

16 Cal. Oct. 27, 2008) *aff'd*, 358 Fed. App'x 805 (9th Cir.2009).   However, allegations that "only

17 demonstrate that the parties are associated in a manner directly related to their own primary

18 business activities" fail to demonstrate a common purpose.  *Shaw v. Nissan N. Am., Inc.*, 220 F.

19 Supp. 3d 1046, 1057 (C.D. Cal. 2016).  "Courts have overwhelmingly rejected attempts to

20 characterize routine commercial relationships as RICO enterprises."  *Gomez v. Guthy–Renker,*

21 *LLC*, No. 14-cv-01425-JGB, 2015 WL 4270042, at *8 (C.D. Cal. Jul. 13, 2015) (collecting

22 cases).  Plaintiffs must "do '[s]omething more' to 'render [their] allegations plausible within the

23 meaning of *Iqbal* and *Twombly*.'"  *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751

24 F.3d 990, 999 (9th Cir. 2014) (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104,

25 1108 (9th Cir. 2013)).

26     In the instant case, Plaintiff alleges it opened an account with AutoZone as part of JD

27 Tire's business operations.  (ECF No. 43 at 3.)  Someone charged $11,165.46 to this account,

28 which AutoZone then placed in collections with RMI.  (*Id*. at 5.)  RMI then sent two collection

12

1   notices to Plaintiff in February and March of 2023 in relation to the AutoZone debt.  (*Id*.)

2   Plaintiff argues these activities go beyond normal creditor and debt collector business affairs

3   because both AutoZone and RMI knew the AutoZone debt was fraudulent.  (ECF No. 69 at 12–

4   13.)

5           However, as AutoZone and RMI argue, there are no factual allegations which indicate

6   AutoZone knew the debt was fraudulent when it sent the debt to collections with RMI, nor does

7   Plaintiff allege RMI knew the underlying debt was fraudulent when it sent collection notices to

8   Plaintiff.  (ECF Nos. 63 at 11, 65 at 12.)  Moreover, Plaintiff has not alleged how the nature of the

9   allegedly fraudulent scheme necessitated coordination, integration, or a shared purpose between

10  AutoZone and RMI to collect fraudulent debt.  *C.f.  Sihler v. Fulfillment Lab, Inc.*, No. 3:20-CV-

11  01528-H-MSB, 2021 WL 1293839, at *8 (S.D. Cal. Apr. 7, 2021) (finding plaintiff's allegations

12  went "beyond connecting Defendants to each other by way of normal commercial dealings" and

13  demonstrated "the Defendants' activities were undertaken with common fraudulent intent");

14  *Odom*, 486 F.3d at 552 (finding plaintiff established a common purpose through allegations that

15  Best Buy and Microsoft actively worked together in an indispensable and integrated manner to

16  mutually engage in wrongful acts).

17          Without such factual allegations in the FAC, Plaintiffs allegations amount to nothing more

18  than routine commercial dealings between a creditor (AutoZone) and a debt collector (RMI).

19  RICO liability must be predicated on a relationship more substantial than such a routine

20  commercial relationship between a creditor and a debt collector.  *See Gardner v. Starkist Co.*, 418

21  F. Supp. 3d 443, 461 (N.D. Cal. 2019) ("Simply characterizing routine commercial dealing as a

22  RICO enterprise is not enough.").

23          Thus, the Court finds Plaintiff has not sufficiently alleged RMI or AutoZone were a part

24  of a RICO enterprise.  Accordingly, the Court GRANTS AutoZone and RMI's motion to dismiss

25  and DISMISSES Plaintiff's RICO claim with leave to amend.

26  ///

27  ///

28  ///

1   IV.   CONCLUSION

2          For the reasons set forth above, the Court GRANTS AutoZone's Motion to Dismiss (ECF

3   No. 63) and RMI's Motion to Dismiss (ECF No. 65) and DISMISSES Plaintiff's claims against

4   AutoZone and RMI with leave to amend.  Plaintiff may file an amended complaint within thirty

5   (30) days of the electronic filing date of this Order.  AutoZone and RMI shall file responsive

6   pleadings not later than twenty-one (21) days from the electronic filing date of Plaintiff's

7   amended complaint.  If Plaintiff opts not to file an amended complaint, the Court will dismiss

8   AutoZone and RMI from this action and proceed on Plaintiff's claims against the remaining

9   defendants.  Finally, the Court DISCHARGES the Order to Show Cause (ECF No. 80) issued by

10  the Court on June 21, 2024.

11         IT IS SO ORDERED.

12  Date: August 2, 2024

13

14

15

16                         Troy L. Nunley
                           United States District Judge
17

18

19

20

21

22

23

24

25

26

27

28

14